# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARI A. MULLINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-00229-TWP-MJD ) |
| CAROLYN W. COLVIN, | ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Shari A. Mullins ("Ms. Mullins") requests judicial review of the final decision of the Commissioner of the Social Security Administrator (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Ms. Mullins filed her applications for DIB and SSI on January 6, 2009, alleging a disability onset date of January 31, 2003. These claims were initially denied on March 27, 2009, and upon reconsideration on June 24, 2009. Thereafter, Ms. Mullins requested a hearing, which was held on May 10, 2011 before Administrative Law Judge Monica LaPolt (the "ALJ"). On August 31, 2011, the ALJ denied Ms. Mullins' applications and on January 2, 2013, the Appeals Council affirmed the ALJ's denial, thus making it the final decision of the Commissioner for the purposes of judicial review. 20 C.F.R § 416.1481. On February 8, 2013, Ms. Mullins filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

### B. Factual and Medical Background

Ms. Mullins was forty-six years old at the time of her May 2011 hearing and she has a 7th grade education. She attempted to obtain a GED but was unsuccessful. She has several physical, emotional, and mental limitations, but only her mental limitations are being contested here. Although Ms. Mullins had not worked in two years when she appeared before the ALJ, she had held several jobs before that, but never for extended periods of time. These jobs included cook, "french fryer," dishwasher, janitor, busser, and cashier.

Ms. Mullins lives with her adult daughter and has custody of her granddaughter (age 11) and grandson (age 8), since birth. At home she is able to take baths, watch television, periodically clean the house, and go shopping. She struggles to read a newspaper and cannot write well. Ms. Mullins relies on her daughter to help her take her medication because she frequently forgets. Her driver's license is expired and has not been renewed because Ms. Mullins has been unable to pass the test after three or four attempts.

Ms. Mullins' mental and emotional impairments were diagnosed by two different doctors, Dr. Herbert Henry ("Dr. Henry") and Dr. Stacia Hill ("Dr. Hill"). Dr. Henry evaluated Ms. Mullins at the request of the Indiana Disability Determination Bureau. After performing several tests, Dr. Henry determined that Ms. Mullins' Full Scale IQ was 65, which indicated mild mental retardation. He commented that her level of adjustment exceeded the level characteristic of mildly mentally retarded individuals, and diagnosed her with Borderline Intellectual Functioning.

Dr. Hill was the Disability Determination Service Psychiatric Expert and provided an additional mental assessment of Ms. Mullins. According to Dr. Hill, Ms. Mullins has moderate mental limitations and would be unable to complete complex tasks, but would be able to complete repetitive tasks on a sustained basis. In determining the degree of Ms. Mullins'

functional limitations, Dr. Hill identified Ms. Mullins' difficulties in concentration, persistence, or pace as moderate. In her written assessment, she then concluded that while Ms. Mullins' concentration was moderately impacted, it was reasonable for simple tasks.

**C.    The ALJ's Decision**

The ALJ made the following findings as part of her decision. At step one, the ALJ determined that Ms. Mullins has not engaged in substantial gainful activity since January 31, 2003, because the work she performed after that date did not rise to the level of substantial gainful activity. At step two, the ALJ found that Ms. Mullins has the following severe impairments: Chronic Obstructive Pulmonary Disease and Borderline Intellectual Functioning. The ALJ determined that Ms. Mullins has the following non-severe impairments: chronic low back pain, Emphysema, Restless Leg Syndrome, trouble sleeping, lung swelling, fatigue, depression, Esophageal Reflux Disease, Anxiety NOS, panic attacks, headaches, incontinence, pain in the Second Metacarpal, mild dependent Atelectasis in lung bases, small nasal tip fracture, rectal bleeding, hysterectomy, and estrogen deficiency. At step three, the ALJ found that Ms. Mullins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Mullins has the residual functional capacity ("RFC") to perform light work and that Ms. Mullins has the mental capacity to understand, remember, and follow simple instructions and can perform simple, routine, repetitive, concrete, tangible tasks. At step four, the ALJ concluded that Ms. Mullins is capable of performing some of her past relevant work such as janitor and bus person. At step five, the ALJ found that Ms. Mullins is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore concluded Ms. Mullins is not disabled.

## II.  DISABILITY STANDARD OF REVIEW

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 1382c(a)(3)(A). The Social Security Administration ("the SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.*

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then he is not disabled. At the fifth step, considering the claimant's age,

work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 USC §§ 423(d)(2)(B) and 1382a(a)(3) (G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be

based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

### III. DISCUSSION

In her appeal, Ms. Mullins argues that her moderate difficulties in maintaining concentration, persistence, or pace were not included in the RFC assessment or the ALJ's hypothetical questions to the vocational expert ("VE"). Furthermore, Ms. Mullins argues that when her moderate deficiencies in concentration, persistence or pace were included in a hypothetical question to the VE, that expert testified that Ms. Mullins would not be able to sustain full-time competitive work. Ms. Mullins argues that this amounts to a reversible error and requests that the Court either remand the case to the Commissioner for an award of benefits

or, in the alternative, reverse the denial of her claims and remand the case for another hearing and another decision.

A.  **The ALJ did not err in either the residual function capacity assessment or the hypothetical questions posed to the vocational expert regarding Ms. Mullins' moderate difficulties in maintaining concentration, persistence, or pace.**

Both parties mutually agree that the ALJ found that Ms. Mullins has moderate difficulties in maintaining concentration, persistence, or pace. Dkt. 22 at 8, 11; Dkt. 23 at 1. This finding was based entirely on the medical report provided to the Court by the Disability Determination Service Psychiatric Expert, Dr. Hill. In her report, Dr. Hill checked a box identifying Ms. Mullins as having "moderate" difficulties in maintaining concentration, persistence, or pace. Tr. at 524. In her written remarks to this report, Dr. Hill stated that Ms. Mullins was "primarily limited by physical issues" and "attention/concentration are moderately impacted but appear reasonable for simple tasks." Tr. at 530. The ALJ gave "significant weight" to Dr. Hill's opinion, Tr. at 22, and concluded that "with regard to concentration, persistence, and pace, [Ms. Mullins] has moderate difficulties." Tr. at 17.

Ms. Mullins argues that her moderate difficulties in concentration, persistence, or pace were not accounted for in the hypothetical questions posed to the VE and in her RFC. This argument fails because it requires the ALJ to provide further restrictions in her hypothetical than are found in the medical evidence. Ms. Mullins concedes that the words "concentration," "persistence," and "pace" were used in both the hypothetical and RFC, but argues that these words never applied further restrictions on Ms. Mullins beyond the restrictions caused by her other emotional and physical limitations. She argues that limiting her to "simple repetitive work does not account for her limitations in concentration, persistence, or pace." Dkt. 17 at 8. This

7

argument, however, ignores the medical evidence which is the foundation of Ms. Mullins' prescribed limitations.

In presenting hypothetical questions to the VE, the ALJ must "include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). As the court in *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011), explained, "the ALJ was required to pose hypothetical questions to the vocational expert consistent with [the medical expert's] opinion (and with those of the other physicians on whose opinions he relied) to give the expert a complete picture of [the applicant's] residual functional capacity." The only sentence written by any medical professional regarding Ms. Mullins' concentration, persistence, or pace was this brief statement by Dr. Hill: "attention/concentration are moderately impacted but appear reasonable for simple tasks." Tr. at 530. This finding indicates that Ms. Mullins may have some difficulty concentrating, but she has the ability to concentrate for simple tasks. The hypothetical and RFC given by the ALJ were nearly identical to this finding. In the hypothetical, the ALJ merely moved the limitation of simple tasks to the beginning of the sentence rather than the end, stating, "[w]ithin these parameters and in the context of performing simple routine repetitive concrete tasks the individual is able to sustain attention and concentration skills to carry out work like tasks with reasonable pace and persistence." Tr. at 73. In both Dr. Hill's finding and the ALJ's hypothetical, it is clear that if given simple tasks, Ms. Mullins has the necessary concentration, persistence, and pace to complete the task. This is the extent of her deficiencies in concentration, persistence, and pace found in the evidence. Imposing further restrictions to account for difficulties in this area would require that the ALJ deviate from the record and effectively make up further limitations.

Ms. Mullins similarly argues that the ALJ's RFC is flawed because it restricts her to simple routine tasks without accounting for her ability to concentrate or persist in these tasks. While it is certainly true that the "ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of given complexity," *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), restricting a person's work to that which is simple, routine, repetitive, and concrete could be a reasonable restriction designed to address both issues. As the ALJ stated, Ms. Mullins' moderate deficiency in concentration, persistence, or pace did not represent "a separate functional limitation, or one that is different in degree, from the unskilled work" that the ALJ had already assessed. Tr. at 18. Ms. Mullins' argument ignores the possibility that restricting Ms. Mullins to simple routine tasks may account for any emotional or social problems she may have as well as for her difficulties in concentration, persistence, or pace. Ms. Mullins argues that the ALJ incorrectly limited the RFC to someone who can complete routine, repetitive tasks with simple instruction, *despite* Ms. Mullins' difficulties with concentration, persistence, or pace. This is not the case. The ALJ limited the RFC to a worker who can complete routine, repetitive tasks with simple instruction, *because of* Ms. Mullins' difficulties with concentration, persistence, or pace.

**B.    The vocational expert sufficiently accounted for Ms. Mullins' difficulties in concentration, persistence, or pace in his finding that someone with those limitations could sustain full-time competitive work.**

Both parties agree that Ms. Mullins had moderate difficulties in concentration, persistence, or pace and that the term "moderate" is not defined by the Act or any other relevant regulation. Dkt. 17 at 11; Dkt. 22 at 12. Even the ALJ acknowledged that the term "moderate" is not defined and "that is a frustration for many people." Tr. at 79. Ms. Mullins argues that it is reasonable to define "moderate" as a reduction in concentration, persistence, or pace that is "20

9

percent less than normal." Dkt. 17 at 11. When the VE was presented with this definition of "moderate," the VE found that there were not any full-time employment opportunities for someone with this degree of limitation. Tr. at 78.

Ms. Mullins' argument essentially asks this Court to reject a definition of "moderate" that allows a person to still complete routine simple tasks for employment and replace it with one that does not. To support this conclusion, Ms. Mullins cites several cases demonstrating that such a definition would be reasonable. However, Ms. Mullins fails to cite any case that establishes that the definition used by the ALJ was *unreasonable*. On the contrary, the understanding of "moderate" that the ALJ employed appears quite reasonable considering the medical evidence. Specifically, Dr. Hill checked a box identifying Ms. Mullins as having "moderate" difficulties in the field of "concentration, persistence, or pace," and in her written comments explaining this conclusion she stated that the moderate deficiency still allowed Ms. Mullins to complete "simple tasks." Tr. at 524, 530. Thus, under the definition of "moderate" used by Dr. Hill, a person may have moderate deficiencies in concentration, persistence, or pace yet still be able to complete routine simple tasks. The ALJ's choice to use the definition of moderate utilized by the medical professional who personally diagnosed Ms. Mullins, rather than a definition used in several unpublished cases, is reasonable.

At best, Ms. Mullins' argument leaves this Court with two possible definitions of "moderate," both of which appear reasonable. This Court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). If "reasonable minds could differ" on this issue, the finding of the ALJ must be affirmed. *Books v. Chater*, 91 F.3d 972, 978

(7th Cir. 1996). This Court will not substitute the ALJ's reasonable understanding of "moderate" with its own, regardless of how reasonable the alternative appears.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, the Court **AFFIRMS** the Commissioner's decision denying benefits. Ms. Mullins' appeal is **DENIED**.

**SO ORDERED.**

Date: 02/13/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov